# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **LLOYD PERRY** | **CIVIL ACTION NO. 17-0583** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **CITY OF BOSSIER, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Plaintiff Lloyd Perry ("Perry") brings this action under 42 U.S.C. § 1983 and Louisiana constitutional and tort law to recover damages for wrongful arrest and excessive force. [Record Document 1]. Defendants have moved for summary judgment. [Record Document 23]. For the reasons given below, the motion is **GRANTED** as to (1) the § 1983 substantive due process claims; (2) the § 1983 claim against the City of Bossier (the "City"); (3) the claims against Chief Shane McWilliams ("McWilliams"); (4) the official capacity claims against Officers Brandon Kowalzek ("Kowalzek") and Lamond Wheatley ("Wheatley"); (5) the § 1983 and Louisiana constitutional claims against Kowalzek for false arrest; (6) the § 1983 and Louisiana constitutional claims against Kowalzek for the force used while attempting to handcuff Perry; (7) the § 1983 and Louisiana constitutional claims against Wheatley for the force used when punching Perry; (8) the § 1983 claim against Wheatley for failure to intervene; (9) the negligent hiring, training, and supervision claim against the City; and (10) the false arrest and false imprisonment tort claims arising from the initial stop of Perry. Summary judgment is **DENIED** as to (1) the § 1983 and Louisiana constitutional claims against Kowalzek and Wheatley for the force used to take Perry to the ground; (2) the false arrest and false imprisonment tort claims for

1

handcuffing and arresting Perry; and (3) the tort claims for battery, assault, and excessive force.

## I. <u>Background</u>

On April 29, 2016, Perry was sitting inside of a home in Bossier City, Louisiana. [Record Documents 23-3 at 1 and 23-11 at 39–40]. A truck driven by a man named Scoot allegedly hit Perry's car, which was parked nearby; Scoot then drove off. [Record Document 23-11 at 37–39]. Scoot's sister, who was outside of the home, witnessed the accident and told Perry what had happened. [*Id.* at 38–39]. After examining his car, Perry called the Bossier City Police Department ("BCPD") to report the hit-and-run. [Record Documents 23-3 at 1 and 23-11 at 48]. Kowalzek responded to the call, met Perry at his nearby apartment complex, and drove him back to the accident site where Perry had left his car. [Record Document 23-3 at 1–2]. All events from the time Kowalzek restarted his police cruiser to return Perry to the accident site were recorded by the cruiser's dashboard camera. [Record Documents 23-3 at 1 and 23-5].

When they arrived at the accident site, Kowalzek inspected Perry's car and asked Perry for his license, registration, and proof of insurance. [Record Document 23-3 at 2]. Perry handed over his license, prompting Kowalzek to repeat his request. [*Id.*]. Perry then moved slowly back towards his car and seemed to search for his keys before returning to Kowalzek without the requested documents. [*Id.*]. Kowalzek requested Perry's registration and proof of insurance once again, and Perry retrieved them from his car. [*Id.*].

Kowalzek instructed Perry to wait inside his car while Kowalzek completed his report. [*Id.*]. Kowalzek spoke briefly to a bystander about the incident before continuing to work on the report. [*Id.*]. At this point, Perry drove away without warning, leaving Kowalzek with Perry's license, registration, and insurance information. [*Id.* at 3].

Kowalzek responded to this unexpected turn of events by following Perry and conducting a traffic stop in the parking lot of Perry's apartment complex. [*Id.*]. Perry exited his car and began arguing with Kowalzek, who asked Perry to stand in front of the police cruiser. [*Id.*]. Perry complied, but continued arguing with Kowalzek. [*Id.*]. Perry did, however, answer Kowalzek's query as to why Perry had driven away from the accident site; Perry explained that he drove off because Kowalzek was "talking to everybody but me." [Record Document 23-5 at 18:28:30–:39]. After requesting a supervisor from police dispatch, Kowalzek attempted to give *Miranda* warnings to Perry, but emphasized that Perry was not under arrest. [Record Documents 23-3 at 3 and 28-5 at 2]. Perry was clearly frustrated and repeatedly interrupted Kowalzek's attempts to give the warnings. [Record Documents 23-3 at 3 and 23-5 at 18:27:46–:29:25].

Kowalzek then announced that he was going to handcuff Perry for officer safety. [Record Document 23-3 at 4]. After Kowalzek grabbed Perry to apply the handcuffs, Perry began to struggle by pulling his hands away from Kowalzek and using them to brace himself against the hood of the police cruiser and push back against Kowalzek. [*Id.* at 4–5]. Kowalzek called for expedited help, and the dispatcher issued an emergency call for all available officers to report to the scene. [*Id.* at 4].

Wheatley heard both calls and responded. [*Id.*]. As he drove, he heard the sound of a struggle over the police radio, and when he arrived in the parking lot, he saw Perry and Kowalzek struggling. [*Id.* at 5]. By this point, Kowalzek had placed one of Perry's hands in handcuffs, but had been unable to cuff the other hand. [*Id.*]. Wheatley approached the struggling pair and attempted to grab Perry's left arm before moving around and to the right of the pair. [*Id.*]. Wheatley then punched Perry in the jaw once. [*Id.*]. At that point, Kowalzek and Wheatley

took Perry down to the ground where they successfully applied the handcuffs. [*Id.* at 6]. At the police station, Perry was booked for Resisting an Officer with Force or Violence and Misrepresentation During Booking. [Record Document 23-17 at 1]. These charges were dismissed. [Record Document 1 at 5].

From his encounter with Kowalzek and Wheatley, Perry alleges that he suffered a broken jaw, a left eye hemorrhage, lacerations to his liver, an aneurysm, and anemia associated with acute blood loss. [*Id.* at 4]. The Court granted the parties' joint motion to delay medical discovery until the resolution of the summary judgment motion. [Record Document 19].[1] Perry has opposed the instant motion, and Defendants have filed a reply. [Record Documents 28 and 30].

## II.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving

---

[1] Because medical discovery has not been completed, this ruling will not address whether summary judgment is warranted on the basis that Perry cannot establish the existence or causation of his injuries.

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be

5

deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## III.  **Disputed Facts**

The degree of force that an officer may employ when arresting or detaining a suspect depends in part upon the severity of the suspected crime. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because Defendants argue that Kowalzek had reasonable suspicion to stop Perry in the parking lot and probable cause to arrest him, facts supporting these determinations are critical. [Record Documents 23-1 at 9–14 and 29 at 1–3]. Defendants claim that Kowalzek could smell alcohol on Perry from the moment of their first encounter and in support reference medical reports from later that day stating that Perry was intoxicated and that his breath smelled of alcohol. [Record Documents 23-3 at 2, 23-18 at 1, and 23-19 at 5]. Perry's evidence—that Kowalzek did not mention the smell of alcohol in the police report, that Kowalzek described the smell as one of "impurities" in an interview during an Internal Affairs investigation, and that Kowalzek ordered Perry to sit in the front seat of his own car where he could easily leave the scene—calls Defendants' claim into question. [Record Document 28 at 4–5]. Although Defendants' evidence suggests that Perry did smell of alcohol on the day of the incident, the relevant fact is whether <u>Kowalzek</u> perceived the smell of alcohol, as it is the set of facts available to the arresting officer from which probable cause is to be determined. From Perry's evidence, a jury could conclude that Kowalzek had not smelled alcohol on Perry.

The parties also dispute whether Kowalzek had completed the portion of the investigation that required Perry's car to remain located where it had been hit. [Record Documents 23-3 at 3 and 28 at 3–4]. Although Kowalzek had not completed the accident report before Perry drove off, it is unclear whether he had finished inspecting Perry's car. In his

Internal Affairs interview, Kowalzek stated that he had enough information by the time Perry drove away in order to complete the hit-and-run report. [Record Document 28-3 at 3]. Because on summary judgment the Court must make inferences in Perry's favor, *see Anderson*, 477 U.S. at 255 (citing *Adickes*, 398 U.S. at 158–59), the Court will infer, for purposes of this motion, that Kowalzek did not smell alcohol on Perry and that Kowalzek had finished inspecting Perry's car before Perry left the accident site.

## IV. Federal Claims

### A. Fourteenth Amendment Claims

Perry asserts each of his § 1983 claims under both the Fourth and Fourteenth Amendments. [Record Document 1 at 5–15]. To the extent that Perry asserts the Fourteenth Amendment for the unremarkable proposition that Fourth Amendment protections apply to state actors by virtue of the Fourteenth Amendment, *see Shaboon v. Duncan*, 252 F.3d 722, 733 (5th Cir. 2001), his Fourteenth Amendment claims survive summary judgment where the underlying Fourth Amendment claims do.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham*, 490 U.S. at 395). Because Perry's false arrest and excessive force claims are cognizable under the Fourth Amendment, *see Petta v. Rivera*, 143 F.3d 895, 900 (5th Cir. 1998) (citing *Graham*, 490 U.S. at 395, 396 n.10), the Court dismisses Perry's Fourteenth Amendment claims to the extent that they purport to be substantive due process claims.

7

**B.**  *Monell* **Claim Against the City**

Perry alleges that the City is liable for maintaining policies, customs, or practices that allowed Kowalzek and Wheatley to violate Perry's constitutional rights. [Record Document 1 at 13–15]. To impose liability on a municipality under § 1983, a plaintiff must prove three elements: a "policymaker[,] an official policy[,] and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Defendants argue that Perry's claim fails because he cannot establish an underlying constitutional violation and because BCPD has no policy authorizing or encouraging constitutional violations. [Record Document 23-1 at 26]. Defendants' uncontroverted evidence reveals that BCPD "do[es] not have a custom, policy[,] or practice of violating or allowing any police to violate the rights of any citizen or any other person," [Record Document 23-22 at 1], that BCPD's use-of-force policies correspond to model policies, [Record Document 23-21 at 5], and that Kowalzek and Wheatley had completed required use-of-force training, [Record Documents 23-21 at 5 and 23-23 at 1–3]. Although Perry maintains that Kowalzek and Wheatley violated his rights, he has produced no evidence suggesting that BCPD policies caused their allegedly objectionable conduct. In the absence of any countervailing evidence, the Court grants summary judgment for the City on Perry's *Monell* claim.

**C.**  **Claims Against McWilliams**

Perry sues McWilliams, the BCPD chief, in his individual and official capacities. [Record Document 1 at 2]. Although Perry does not name McWilliams in any specific claim, the Court construes Perry's claims against McWilliams as arising under § 1983 as that is the context in

which the distinction between individual and official capacity claims is legally significant. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). An official capacity suit a against municipal officer duplicates a suit against the officer's municipality. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Because the Court has held that Perry's *Monell* claim against the City fails, his claim against McWilliams in the latter's official capacity also fails.

Because McWilliams's only involvement in the conduct forming the basis of this complaint is in his role as Kowalzek and Wheatley's supervisor, an individual capacity claim can only arise from his alleged failure to train or supervise his officers. An individual-capacity failure-to-supervise claim is identical to a municipal-liability failure-to-supervise claim. *Lewis v. Pugh,* 289 F. App'x 767, 771 (5th Cir. 2008) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994)). The City is entitled to summary judgment on Perry's § 1983 claims, and so McWilliams is entitled to summary judgment on claims against him in his individual capacity. The Court thus dismisses all claims against McWilliams.

### D.    Official Capacity Claims Against Kowalzek and Wheatley

Perry brings claims against Kowalzek and Wheatley in their official and individual capacities. [Record Document 1 at 2]. An official capacity suit against a municipal officer is treated as a suit against the officer's municipality. *Turner*, 229 F.3d at 483 (citing *Graham*, 473 U.S. at 165). Municipalities are liable for their officers' constitutional torts only when the municipality's policy caused the constitutional violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 484 (1986). Only a decisionmaker "possess[ing] final authority to establish municipal policy with respect to the action ordered" establishes official policy for purposes of municipal

liability under § 1983. *Id.* at 481 (plurality opinion). Kowalzek and Wheatley were BCPD officers, [Record Document 1 at 2], but no record evidence establishes that either man had the authority to set policy regarding arrests and use of force. Hence, they are improper parties to sue in order to establish the City's liability. The Court thus grants summary judgment as to all § 1983 claims against Kowalzek and Wheatley in their official capacities.

E.   **Qualified Immunity Under § 1983**

A police officer who violates a person's Fourth Amendment right to be free of unreasonable searches and seizures is entitled to qualified immunity against individual-capacity suits unless the officer's conduct was unreasonable in light of clearly established law. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once a defendant asserts qualified immunity, a plaintiff must prove (1) that a federal constitutional or statutory right was violated; and (2) that the right was clearly established at the time of the violation. *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (citing *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). These two prongs may be evaluated in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'" *al-Kidd*, 563 U.S. at 741–42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), and defined with a "high 'degree of specificity,'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)). Existing authority must do more than merely suggest or imply the desired rule of law; rather, "[t]he precedent must be clear enough that every reasonable official would

interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)). The "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

Not only must the rule itself be clearly defined, its application to the particular circumstances confronting the offending officer must be similarly clear. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Wilson*, 562 U.S. at 615) (identifying the relevant inquiry as "whether it would be clear to a reasonable officer that his conduct was unlawful <u>in the situation he confronted</u>" (emphasis added)). Because the situations in which police officers on patrol must apply the Fourth Amendment to the facts before them are as varied as life itself, the "'specificity' of the rule is 'especially important in the Fourth Amendment context.'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix*, 136 S. Ct. at 308). For this reason, unless the conduct at issue is so obviously unlawful that every reasonable officer would be on notice of the unlawfulness without the assistance of precedent, *id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)), a plaintiff seeking to overcome qualified immunity must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). The operative word here is "similar." There may be "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

**F.      False Arrest Claims Against Kowalzek**

Perry alleges that Kowalzek violated Perry's Fourth Amendment rights by unlawfully seizing and detaining him. [Record Document 1 at 5–7]. Defendants assert that Kowalzek had probable cause to arrest Perry for obstruction of justice, driving while intoxicated, and resisting an officer. [Record Document 23-1 at 11–14].

Fourth Amendment rights vary depending on the nature of a police encounter. Police may initiate consensual encounters without any particular rationale, *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion), detentions require reasonable suspicion that criminal activity "may be afoot," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)), and arrests require probable cause, *Dunaway v. New York*, 442 U.S. 200, 208 (1979). Reasonable suspicion means "something more than an inchoate and unparticularized suspicion or hunch." *Sokolow*, 490 U.S. at 7 (internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27). Probable cause, a higher standard, is a particularized ground to believe that the arrestee committed a crime. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Because these standards are objective, reasonable suspicion and probable cause determinations are based on the facts available to the seizing officer at moment of seizure without reference to that officer's subjective intentions. *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004).

### 1.      Stop in the Parking Lot as a Detention

Perry's encounter with Kowalzek began consensually when Perry reported that his car had been hit. The encounter evolved into an investigative detention when Kowalzek stopped Perry in the parking lot of his apartment complex. A traffic stop of an individual car requires

reasonable suspicion. *See Brendlin v. California*, 551 U.S. 249, 263 (2007); *Delaware v. Prouse*, 440 U.S. 648, 655 (1979).

To evaluate whether Kowalzek had reason to suspect that "crime was afoot" requires defining the set of facts he possessed. *See Wesby*, 138 S. Ct. at 590–91 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). At the time he stopped Perry in the parking lot, Kowalzek knew the following: (1) Perry reported a hit-and-run, but gave the address of his apartment complex rather than the location of the car; (2) Kowalzek drove Perry to his car; (3) Kowalzek requested Perry's license, registration, and proof of insurance; (4) Perry provided his license; (5) Kowalzek repeated his request for Perry's registration and insurance; (6) Perry shuffled slowly back to his car and returned to Kowalzek without the documents; (7) Kowalzek requested the documents a third time, and Perry retrieved them; (8) Kowalzek sat in his car completing the investigation; and (9) Perry drove away from the accident site without asking Kowalzek to return the documents. [Record Document 23-3 at 2–3]. As discussed above, the Court infers for summary judgment purposes that Kowalzek did not smell alcohol on Perry and that Kowalzek had completed his inspection of Perry's car.

As the basis for the stop, Kowalzek explains: "as far as what—going on in my head is there's a crime committed. Some way, some way, shape, form, that it needs to be investigated . . . ." [Record Document 23-9 at 57]. While this inarticulate justification does not support a *Terry* stop, the reasonableness of a seizure turns not on the seizing officer's rationale, but rather on the facts known to that officer. *See Devenpeck*, 543 U.S. at 155. Thus, Kowalzek's garbled explanation does not necessarily render the stop unconstitutional.

The two most salient facts are Perry's strange, shuffling behavior as he took multiple

attempts to retrieve his license, registration, and insurance information and his decision to drive away from the accident site leaving his documents in Kowalzek's possession. "The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Those under the influence of alcohol or controlled dangerous substances may display "poor judgment, increased reaction time, muscle incoordination, loss of visual acuity, [and] increased risk taking." *Sanchez v. Life Ins. Co. of N. Am.*, 393 F. App'x 229, 233 (5th Cir. 2010); *see also State v. Kestle*, 2007-1573, p. 10 (La. 12/2/08); 996 So. 2d 275, 281 (holding that slurred speech, trouble following directions, and poor balance are evidence of intoxication from a controlled dangerous substance). A commonsense conclusion that Kowalzek could draw from Perry's apparent confusion, his slow and shuffling movements, and his unusual decision to drive away leaving the documents is that he was under the influence of some intoxicating substance. Based on that conclusion, Kowalzek had reasonable suspicion that Perry was driving while intoxicated and thus is entitled to summary judgment on Perry's claim that the initial detention in the parking lot was unconstitutional.

Even if Kowalzek lacked reasonable suspicion to stop Perry, summary judgment is still proper if qualified immunity applies. To defeat Kowalzek's qualified immunity defense, Perry must identify a case where a court, on similar facts, found that reasonable suspicion did not exist. *See Wesby*, 138 S. Ct. at 590 (quoting *White*, 137 S. Ct. at 552). Perry directs the Court to *United States v. Monsivais*, 848 F.3d 353 (5th Cir. 2017), for the proposition that "strange behavior is not enough to support reasonable suspicion to detain someone," [Record Document 28 at 4]. *Monsivais* was not decided at the time of Perry's encounter with Kowalzek. Because the "use of

post-conduct cases to establish the existence or contours of a right . . . run[s] afoul of . . . qualified-immunity jurisprudence," *Anderson*, 845 F.3d at 607, *Monsivais* cannot constitute clearly established law for present purposes. Therefore, the Court holds that Kowalzek is entitled to qualified immunity and dismisses Perry's claim that Kowalzek violated Perry's rights via the initial detention in the parking lot.

### 2.     Handcuffing Perry as a Detention or an Arrest

#### a.     Handcuffing on the Basis of Officer Safety

After stopping Perry to investigate why he had driven off, Kowalzek tried to handcuff Perry. [Record Document 23-3 at 3–4]. An officer may handcuff a suspect during a *Terry* stop without converting the stop into an arrest for which probable cause is required. *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000) (citing *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993)). However, handcuffs are only permissible during an investigatory stop if "less intrusive procedures" will not allow officers to "safely conduct their investigation." *Id.* (citing *Sanders*, 994 F.2d at 206).

Therefore, the relevant inquiry is whether the facts available to Kowalzek were such that it was reasonable for him to handcuff Perry for officer safety. Once Perry stopped in the parking lot, he exited his car and approached Kowalzek, who instructed Perry to stand in front of the police cruiser. [Record Document 23-3 at 3]. Perry did so and began arguing with Kowalzek. [*Id.*]. Kowalzek then attempted to give the *Miranda* warnings, which Perry interrupted. [*Id.*]. Both parties agree that Perry was agitated. [Record Document 23-3 at 3 and 28 at 2]. At this point, Kowalzek announced that he was going to handcuff Perry. [Record Document 23-3 at 4].

Based on the facts available to the Court viewed in the light most favorable to Perry, the

Court concludes for summary judgment purposes that handcuffing Perry was unreasonable under the circumstances. Perry had initiated the encounter with Kowalzek by calling BCPD to report the hit-and-run. [*Id.* at 1]. Although the video of their encounter shows that Perry was frustrated and did move towards Kowalzek after getting out his car, Perry did not rush at Kowalzek but rather approached him slowly as if to get close enough to carry on a conversation. [Record Document 23-5 at 18:25:55–:26:30]. Perry complied with Kowalzek's instructions to stand in front of the police cruiser and answered his question. [Record Documents 23-3 at 3 and 23-5 at 18:28:30–:52]. Immediately before Kowalzek announced that he was going to handcuff Perry for officer safety, Perry had repeatedly interrupted the reading of his rights. [Record Document 23-3 at 3–4]. Based on these facts, a jury could find that Perry did not pose a danger to Kowalzek. In comparison, in *United States v. Jordan*, the Fifth Circuit held that handcuffing the defendant during a *Terry* stop was acceptable precisely because that defendant initially refused an order to place his hands on the hood of a car and moved in an "aggressive-type manner." 232 F.3d at 450.

In an attempt to justify the handcuffing, Defendants argue that Perry may have armed himself while in his car. [Record Document 23-1 at 16]. While theoretically possible, nothing about Perry's behavior suggested that he was either armed or dangerous—he was merely uncooperative. Defendants offer a case for the proposition that "it is reasonable to fear that a suspect may have a weapon in his vehicle, particularly when other facts indicate the suspect is potentially dangerous." [Record Document 23-2 at 16]. However, in the case to which they cite, the suspect was inside his vehicle, refused to exit the vehicle, and dropped his hands from view after an officer pointed a gun at him. *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016) (citing

16

*Reese v. Anderson*, 926 F.2d 494, 500–01 (5th Cir. 1991)). In a similar case, the Fifth Circuit found that reasonable grounds existed to believe a suspect was armed when he was inside a vehicle that had just been stopped following a high speed chase and several times reached below the officer's line of sight. *Reese*, 926 F.2d at 500–01. Because Kowalzek's interaction with Perry was substantially less confrontational, Perry's verbal obstinance did not provide indicia of dangerousness, and Perry complied with Kowalzek's instructions regarding where to stand, this Court cannot conclude as a matter of law, even in light of this precedent, that it was reasonable for Kowalzek to fear that Perry was armed.

However, in order to defeat Kowalzek's claim of qualified immunity, Perry must identify a case holding under similar facts that placing a suspect in handcuffs is unreasonable. *See Wesby*, 138 S. Ct. at 590–91 (citing *White*, 137 S. Ct. at 552). Perry again points to *United States v. Monsivais*, 848 F.3d 353, which was decided after Perry's arrest and so cannot constitute clearly established law, *see Anderson*, 845 F.3d at 607. And so, even though this Court finds, based on the evidence and inferences appropriate to summary judgment, that Kowalzek did not have reasonable grounds to handcuff Perry for officer safety, this Court holds that Kowalzek is immune from suit; summary judgment is proper on this claim.

### b. Handcuffing on the Basis of Probable Cause to Arrest

Although Kowalzek's qualified immunity resolves the Fourth Amendment seizure issue with respect to the handcuffing itself, Perry was also formally arrested and transported to the Bossier City jail. [Record Document 23-3 at 6]. Defendants have asserted that Kowalzek had probable cause to arrest Perry for three crimes: driving while intoxicated, obstruction of justice, and resisting an officer. [Record Document 23-1 at 11–14].

La. R.S. 14:98 defines the crime of Operating a Vehicle While Intoxicated to include: (1) driving under the influence of alcohol; (2) driving when the one's blood alcohol content is 0.08% or higher; (3) driving under the influence of a controlled dangerous substance; and (4) driving under the influence of medication. La. Stat. Ann. § 14:98(A) (Supp. 2018). Although the Court has concluded that Perry's somewhat strange behavior at the accident site combined with his decision to drive away gave rise to reasonable suspicion that Perry was under the influence, these facts alone do not necessarily give rise to probable cause. Probable cause exists when, in light of the totality of the circumstances, there is a "fair probability that a crime occurr[ed]." *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (internal quotation marks omitted) (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)). It requires "something more than a bare suspicion, but need not reach the fifty percent mark." *Id.* at 269 (emphasis added). For purposes of summary judgment, the Court infers that Kowalzek did not smell alcohol on Perry and that Perry committed no traffic violations while driving to the apartment complex. In light of these inferences, the Court cannot conclude as a matter of law that Kowalzek had probable cause to arrest Perry for driving while intoxicated.

The second potential crime of arrest, Obstruction of Justice, is defined by the Criminal Code as

> [t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance . . . . [a]t the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers . . . .

La. Stat. Ann. § 14:130.1(A)(1) (Supp. 2018). In addition, conviction requires proof that the

defendant had "knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding." *Id.* Although one can obstruct justice by merely moving evidence, Perry clearly would not have been required to leave his car on the side of the road indefinitely; at some point, he would have been able move it. Thus, the relevant question is whether the car needed to remain at the accident site. Because the answer depends on the disputed fact of Kowalzek's completion of his inspection of Perry's car, the Court finds that Kowalzek is not entitled to a judgment as a matter of law that he had probable cause to arrest Perry for obstruction of justice.

Resisting an Officer, which Defendants assert as a third possible crime for which Kowalzek had probable cause to arrest Perry, is

> the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

La. Stat. Ann. § 14:108(A) (Supp. 2018). "The gravamen of the crime of resisting an officer consists of the intentional obstruction of an officer acting in his official capacity." *State v. Boyer*, 2007-0476, p. 25 (La. 10/16/07); 967 So. 2d 458, 474 (citing *State v. Patterson*, 2000-1212, p. 1 (La. 3/28/01); 783 So. 2d 1243, 1243–44 (per curiam); *State v. Nix*, 406 So. 2d 1355, 1356 (La. 1981) (per curiam)). The offense has three elements: (1) "<u>actual[] obstruct[ion] or interfere[nce] with</u> [an officer] in performing his official duties," *State v. Daigle*, 95-1260, p. 6 (La. App. 3 Cir. 6/11/97); 701 So. 2d 685, 687; (2) the officer's engagement in one of four lawful activities: arrest, detention, seizure of property, or service of process, *Melancon v. Tucker*, 94-26, p. 6 (La. App. 3 Cir. 10/5/94); 645 So. 2d 722, 726; and (3) the defendant's actual or constructive

knowledge that the officer is performing one of these duties, *see State v. Knowles*, 40,324, p. 19 (La. App. 2 Cir. 12/30/05); 917 So. 2d 1262, 1272–73 (citing *Nix*, 406 So. 2d 1355; *State v. Hines*, 465 So. 2d 958 (La. Ct. App. 1985)). There is no dispute that this final element is satisfied.

The Louisiana Supreme Court has been very clear that to violate La. R.S. 14:108, resistance must be to one of the listed activities: arrest, detention, seizure of property, and service of process. *See, e.g., Nix*, 406 So. 2d at 1356–57 ("If the officer is not engaged in attempting any one of those [four] things, then a defendant who flees from him cannot be considered guilty of resisting an officer.").[3] Mere interference with an investigation is insufficient. *See id.* at 1356 (citing *State v. Lindsay*, 388 So. 2d 781 (La. 1980); *State v. Grogan*, 373 So. 2d 1300 (La. 1979); *State v. Huguet*, 369 So. 2d 1331 (La. 1979)).

Because Perry was not detained at the accident site, driving off did not create probable cause to arrest him for Resisting an Officer. Once Perry was detained in the parking lot, he did not attempt to flee. Thus, the existence of probable cause to believe that Perry was resisting Kowalzek depends upon whether his somewhat uncooperative behavior constituted obstruction or interference with the detention for purposes of the statute. "[V]erbal opposition to an officer, even abusive language and cursing, does not constitute the 'opposition' or 'obstruction' proscribed by [section] 108."*Adams v. Thompson*, 557 F. Supp. 405, 410 (M.D. La. 1983) (citing *White v. Morris*, 345 So. 2d 461 (La. 1977); *Norrell v. City of Monroe*, 375 So. 2d 159 (La. Ct. App.

---

[3] At the time of the cases establishing this construction, the statute identified only three predicate actions: arrest, seizure of property, and service of process. *See Nix*, 406 So. 2d at 1356 (citing *State v. Huguet*, 369 So. 2d 1331, 1335 (La. 1979)). A 2006 amendment added "lawful detention" to this list. *See State v. Manuel*, 2006-0486, p. 5 (La. App. 4 Cir. 11/21/06); 946 So. 2d 245, 248. Because no other operative language in this clause of the statute has changed, this Court concludes that the amendment did not alter the Louisiana Supreme Court's preexisting interpretive framework.

1979); *Malone v. Fields*, 335 So. 2d 538 (La. Ct. App. 1976)); *see also Daigle*, 95-1260, p. 7; 701 So. 2d at 688 (finding that a suspect's "attitude" is insufficient to support a conviction for Resisting an Officer). When a person complies with orders regarding where to walk or stand, as Perry did here, "any hostility in his tone d[oes] not obstruct [an] investigatory stop." *Brown v. Lynch*, 524 F. App'x 69, 77 (5th Cir. 2013) (per curiam). Perry also answered Kowalzek's only question. *See id.* (holding that responsiveness to questions is a factor weighing against a finding of probable cause to arrest for a violation of La. R.S. 14:108). Kowalzek asked Perry why he drove away from the accident site to which Perry responded that he drove off because he "was talking to [Kowalzek]" and Kowalzek was "talking to everybody but [Perry]." [Record Document 23-5 at 18:28:02-:51]. Although perhaps not the clearest answer, when viewed in the light most favorable to Perry, it was not deliberately evasive. For purposes of summary judgment, then, the Court infers that a reasonable officer in Kowalzek's position would have construed Perry's statement to mean that he had become impatient while waiting for Kowalzek to complete the report because Perry believed that he had already given Kowalzek all the necessary information and that Kowalzek did not need to speak with additional witnesses. As Perry stood where instructed and answered Kowalzek's question, the Court cannot find as a matter of law, based on the record before it and the inferences required at summary judgment, that Kowalzek had probable cause to believe Perry had committed the offense of Resisting an Officer.

Defendants also argue that probable cause existed to arrest Perry for violating the City's resisting arrest ordinance. [Record Document 23-1 at 13]. Because the ordinance is substantively identical to the state statute, *compare* City of Bossier City Mun. Code § 38-286 *with* La. Stat. Ann. § 14:108, the Court holds for the reasons already discussed that it cannot find as a matter of law

that Kowalzek had probable cause to arrest Perry for this municipal offense.

Nevertheless, an absence of probable cause does not defeat summary judgment unless no reasonable officer would have believed that probable cause existed to arrest Perry for any of these offenses. *See Wesby*, 138 S. Ct. at 590 (citing *Reichle*, 566 U.S. at 666). As Perry offers this Court no case from which to conclude that it was clearly established that no probable cause existed to arrest him any of these offenses, Kowalzek is entitled to qualified immunity on claims related to Perry's formal arrest.

### G.    Excessive Force Claims Against Kowalzek and Wheatley

Perry alleges that Kowalzek and Wheatley used excessive force. [Record Document 1 at 7–10]. There are three distinct moments of physical force in the officers' encounter with Perry: Kowalzek attempting to handcuff Perry, Wheatley punching Perry, and both officers taking Perry down to the ground. For their part, Defendants argue that the force was not excessive and that, even if it was, Kowalzek and Wheatley are entitled to qualified immunity. [Record Document 23-1 at 14–26].

Under federal law, an excessive force claim is "separate and distinct" from a false arrest claim. *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). If the force used during an unlawful arrest did not exceed the quantum of force allowable had the arrest been lawful, a plaintiff cannot maintain an excessive force claim alongside her false arrest claim. *See id.* To prevail on an excessive force claim, a plaintiff must establish "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman*, 483 F.3d at 416). Because reasonableness is the "ultimate touchstone" of the Fourth

Amendment, *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer, *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Garner*, 471 U.S. at 8–9). "[O]fficers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)).

### 1. Force Used to Handcuff Perry

Handcuffing that produces only "minor, incidental injuries" does not violate the Fourth Amendment. *Freeman*, 483 F.3d at 417 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). Even if the Court were to assume that Kowalzek used excessive force when attempting to handcuff Perry, Kowalzek is liable only if this force was "clearly unreasonable." *Ontiveros*, 564 F.3d at 382 (quoting *Freeman*, 483 F.3d at 416). "[N]umerous courts . . . have held that police officers do not act unreasonably in forcing an individual to lean over his or her patrol car when the officer believes it necessary to gain control." *Hernandez v. City of Lubbock*, 634 F. App'x 119, 122 (5th Cir. 2015). It follows that the soft empty hand techniques that Kowalzek used while leaning Perry against the police cruiser were not unreasonable when applied to a suspect resisting being placed in handcuffs. [Record Document 23-5 at 1:29:30–:30:41]. As a result, Kowalzek is entitled to summary judgment on the claim he used excessive force when attempting to handcuff Perry.

## 2.    Force Used to Punch Perry

Wheatley received a report of an officer in need of immediate help, heard the sound of Perry and Kowalzek struggling, watched the struggle unfold as he drove into the parking lot, and saw that Perry was resisting being handcuffed. [Record Document 23-3 at 4–5]. Wheatley responded with a single punch to Perry's jaw to gain his compliance. [*Id.* at 5–6].

Although Perry emphasizes his state-law right to resist unlawful arrest, any right to resist (assuming the arrest was unlawful) does not affect whether the degree of force Wheatley used was excessive (which, under federal law, is determined by assuming that the underlying arrest was lawful). *See Freeman*, 483 F.3d at 417. Assuming that handcuffing Perry was lawful, Perry's repeated attempts to pull his hands from Kowalzek's grasp and prevent the application of the handcuffs constitute active resistance to which an officer may, under Fifth Circuit precedent, respond with "measured and ascending" tactics. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (citing *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010)).

Because Wheatly has asserted qualified immunity, Perry must identify a case where, under similar facts, an officer was held to violate the Fourth Amendment. *See Wesby*, 138 S. Ct. at 590 (quoting *White*, 137 S. Ct. at 552). For the proposition that use of greater than open-handed force against a restrained suspect is excessive, Perry cites *Ramirez v. Martinez*, in which the Fifth Circuit denied qualified immunity when an officer tased a "handcuffed and subdued" suspect. 716 F.3d 369, 379 (5th Cir. 2013). Although Perry analogizes himself to the suspect in *Ramirez*, Perry was neither handcuffed nor subdued. He had repeatedly pulled his hands from Kowalzek's grasp and was successfully resisting being placed in the second handcuff. These critical factual distinctions render *Ramirez* inapposite for qualified immunity purposes. In the absence of any

case finding a Fourth Amendment violation in the degree of force Wheately used to subdue a nonhandcuffed and resisting suspect, Wheatley is entitled to qualified immunity on Perry's claim that the punch constituted excessive force.

### 3. Force Used to Take Perry to the Ground

After Wheatley punched him, the officers were able to take the temporarily stunned Perry to the ground and apply the handcuffs. [Record Document 23-3 at 6]. Although the parties dispute whether Perry's injuries can be attributed to Kowalzek and Wheatley's force during the takedown maneuver, accepting Perry's version of the facts, a jury could find that the takedown caused at least some of his injuries.

In order to evaluate the reasonableness of the force with which Perry was taken to the ground, the Court must determine the degree of force used. When a plaintiff's evidence is "'blatantly contradicted'" by video evidence, her version of the facts need not be credited, but if "[t]he contents of the video are too uncertain to discount [her] version of the events," a court must accept her version on summary judgment. *Ramirez*, 716 F.3d at 374 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The officers' bodies and the hood of the police cruiser obscure the spot where Perry landed, preventing the Court from relying on the footage to evaluate the quantum of force applied during the takedown and subsequent handcuffing. [Record Document 23-5 at 30:43–:31:16]. In particular, because Perry falls out of view, the Court cannot determine how hard he hit the ground nor precisely what degree of force was applied to him as he lay there. [*Id.*]. A jury could find that Perry had ceased resisting when falling to the ground and that Kowalzek and Wheatley continued to apply unreasonable force to complete the handcuffing. If a jury reached these conclusions, then the officers' conduct would violate clearly established

law because "violently slam[ming] an arrestee who is not actively resisting arrest" is a constitutional violation. *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (holding that this right was clearly established as of 2013). Therefore, Kowalzek and Wheatley are not entitled to qualified immunity for the force used to take Perry to the ground.

## H. Failure to Intervene Claim Against Wheatley

Perry has alleged that Wheatley is liable under § 1983 for failing to prevent Kowalzek from violating Perry's rights. [Record Document 1 at 10–13]. Defendants argue that this claim fails because Kowalzek did not violate Perry's rights and because, even if a constitutional violation took place, Wheatley is protected by qualified immunity. [Record Document 23-1 at 26]. Other than to insist that Kowalzek violated his rights, Perry makes no clear response to this argument. [Record Document 28].

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [§] 1983" if the first officer "acquiesce[d]" in the constitutional violation. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The non-intervening officer must "know[] that a fellow officer is violating an individual's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)). Here, Wheatley heard Kowalzek radio for help and heard him struggling with Perry. [Record Document 23-3 at 4–5]. When he arrived, he witnessed the struggle and Perry's successful resistance to being handcuffed. [*Id.* at 5]. Even assuming that Kowalzek could not lawfully handcuff Perry, Perry has pointed to no evidence suggesting that Wheatley knew that Kowalzek was behaving unconstitutionally. In the absence of any evidence from which the Court can infer that Wheatley knowingly acquiesced

in a constitutional violation, the Court grants summary judgment for Wheatley on this claim.

## V.     State Law Claims

### A.     Negligent Hiring, Training, and Supervision Claim Against the City

Perry alleges that the City is liable for negligently hiring, training, and supervising Kowalzek and Wheatley. [Record Document 1 at 21–23]. Defendants argue that discretionary-act immunity protects the City from liability. [Record Document 23-1 at 28–29]. Perry does not respond to this argument. [Record Document 28].

Louisiana law applies the duty-risk analysis to claims of negligent hiring, training, or supervision. *See Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991). Thus, Perry must prove that the City's negligence was a cause-in-fact of his harm, that the City had a duty to protect him from harm at the hands of Kowalzek and Wheatley, that the City breached this duty, and that the risks to which Perry was exposed were within the scope of the City's duty. *See id.* (citing *Mart v. Hill*, 505 So. 2d 1120, 1122 (La. 1987)).

Even if Perry can successfully carry his burden of proof on each element of his negligence claim, public entities in Louisiana are shielded from liability for negligent conduct in the "exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Stat. Ann. § 9:2798.1(B) (2009). However, immunity does not extend to actions that "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.* § 9:2798.1(C)(2). A police chief's training and supervision decisions are policymaking acts under the immunity statute. *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005). Although evidence that Kowalzek and Wheatley were unfit for duty might warrant

a conclusion that their continued employment constituted "outrageous, reckless, or flagrant misconduct," no such evidence appears in the record. Because no facts before the Court trigger the misconduct exception, the Court grants summary judgment for the City on Perry's negligent hiring, training, and supervision claim.

### B. <u>Tortious False Imprisonment and False Arrest Claims Against Kowalzek, Wheatley, and the City</u>

Perry alleges that Kowalzek and Wheatley falsely imprisoned and arrested him and that the City is vicariously liable. [Record Document 1 at 25–28]. Defendants respond that no tort occurred because there was probable cause to arrest Perry and because qualified immunity applies. [Record Document 23-1 at 29–30].

### 1. Qualified Immunity

"Louisiana applies qualified immunity principles to <u>state constitutional</u> law claims," but not to tort claims. *Roberts*, 397 F.3d at 296 (emphasis added) (citing *Moresi v. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990)). Therefore, Defendants have no qualified immunity defense to Perry's false arrest and false imprisonment claims sounding in tort.

### 2. Stop in the Parking Lot as a Detention

Although Perry treats false arrest and false imprisonment as distinct claims, the Louisiana Supreme Court conflates them: "[w]rongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority." *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418, p. 32 (La. 7/10/06); 935 So. 2d 669, 690 (citing *Kyle v. City of New Orleans*, 353 So. 2d 969 (La. 1977)). False imprisonment thus has two essential elements: (1) detention (2) without lawful authority. *Id.* (citing *Tabora v. City of Kenner*, 94-613, p. 8 (La. App. 5 Cir. 1/8/95); 650 So. 2d 319, 322).

Louisiana authorizes the equivalent of *Terry* stops: "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La. Code Crim. Proc. Ann. art. 215.1(A) (2003). For traffic stops, Louisiana applies the federal reasonable suspicion standard. *State v. Hunt*, 2009-1589, pp. 8–9 (La. 12/1/09); 25 So. 3d 746, 753 (citing *Sokolow*, 490 U.S. at 7; *State v. Kalie*, 96-2650, p. 3 (La. 9/19/97); 699 So. 2d 879, 881 (per curiam)). Hence, for the reasons discussed above, the initial detention in the parking lot was lawful because, even viewing the facts in the light most favorable to Perry, Kowalzek had reasonable suspicion that Perry was driving while intoxicated. Because detaining Perry in the parking lot was lawful, Kowalzek could not have committed the tort of false imprisonment at this point. Summary judgment is proper as to this claim.

### 3. Handcuffing Perry as a Detention or an Arrest

During an authorized stop, an officer may handcuff a detainee "for officer safety." *State v. Dube*, 2012-2677, p. 10 (La. 12/10/13); 130 So. 3d 880, 887 (per curiam). The handcuffing "must appear objectively reasonable 'in light of the facts and circumstances confronting [the police].'" *State v. Porche*, 2006-0312, p. 8 (La. 11/29/06); 943 So. 2d 335, 339 (per curiam) (quoting *Graham*, 490 U.S. at 397). As discussed above in the Fourth Amendment context, the record evidence, when viewed in the light most favorable to Perry, could support the inference that handcuffing Perry for officer safety was objectively unreasonable. Thus, the Court cannot grant summary judgment on the basis that officer safety justified handcuffing Perry.

An officer making a lawful arrest may use reasonable force, including handcuffing. La. Code Crim. Proc. Ann. art. 220 (2003); *see Batiste v. City of Baton Rouge*, 2013-1243, pp. 6–7, 13

(La. App. 1 Cir. 10/14/14); 156 So. 3d 192, 196, 199–200. Under Louisiana law, a warrantless arrest is lawful when an officer has "reasonable cause to believe that the person to be arrested has committed an offense." La. Code Crim. Proc. Ann. art. 213(A)(3) (Supp. 2018). Because "reasonable cause . . . is consonant with the probable cause concept," *State v. Drew*, 360 So. 2d 500, 510 (La. 1978), federal court decisions interpreting the Fourth Amendment's probable cause requirement may be used to trace the limits of the reasonable cause requirement, *see, e.g., State v. Fisher*, 97-1133, p. 8 (La. 9/9/98); 720 So. 2d 1179, 1184 (citing *Illinois v. Gates*, 462 U.S. 213 (1984)).

Although this Court holds that Kowalzek is protected by qualified immunity, this Court also holds that it cannot determine as a matter of law on summary judgment that Kowalzek had lawful authority to place Perry in handcuffs at the moment that Kowalzek first attempted to do so. After Kowalzek tried to handcuff Perry, Perry pulled his hands from Kowalzek's grasp and pushed back against him. [Record Document 23-3 at 4]. Defendants argue that this behavior constituted resisting arrest. [Record Document 23-1 at 14]. Perry responds that Louisiana law entitles a person to use physical force to resist an unlawful arrest. [Record Document 28 at 6].

In Louisiana, a person may "resist an illegal restraint of his liberty." *Knowles*, 40,324, p. 20; 917 So. 2d at 1273. The Louisiana Supreme Court derived this "long-established principle" from two statutory provisions: La. R.S. 14:108 and La. C.Cr.P. 220. *See Lindsay*, 388 So. 2d at 782. The Criminal Code defines Resisting an Officer in terms of interference with a "lawful arrest," La. Stat. Ann. § 14:108(A), while the Code of Criminal Procedure demands that a "person . . . submit peaceably to a lawful arrest," La. Code Crim. Proc. Ann. art. 220. From the statutory emphasis on submission to a "lawful arrest," the Louisiana Supreme Court concluded

that resistance is permitted to <u>unlawful</u> arrests. *Lindsay*, 388 So. 2d at 782.[4] Nevertheless, the degree of force used to resist must not "exceed[] that which was reasonably necessary to prevent the arrest." *State v. Ceaser*, 2002-3021, p. 7 (La. 10/21/03); 859 So. 2d 639, 645. Thus, the initial question the Court must answer is whether, once Perry resisted Kowalzek's attempt to use handcuffs, Kowalzek had probable cause to arrest Perry for Resisting an Officer.

Physical resistance to an unlawful arrest cannot support a conviction for Resisting an Officer. *City of Monroe v. Goldston*, 95-0315, p. 4 (La. 9/29/95); 661 So. 2d 428, 430 (per curiam). Persuasive authority suggests that a similar principle should apply to the probable cause determination. The Middle District of Louisiana has expressly concluded that "resistance, even physical resistance, to [an officer's] unlawful arrest can not provide probable cause for [an] arrest" for Resisting an Officer. *Adams*, 557 F. Supp. at 411. Analogously, the Louisiana Fourth Circuit Court of Appeal has suggested that when a frisk is illegal, probable cause does not exist to arrest a person who resists the frisk. *State v. Manuel*, 2006-0486, p. 5 (La. App. 4 Cir. 11/21/06); 946 So. 2d 245, 248.[5] The policy concerns animating Louisiana's rule also support

---

[4] On the basis of the same references to arrests, the Louisiana Supreme Court initially concluded in *State v. Sims* that there was no right to resist an illegal detention. 2002-2208, pp. 12–13 (La. 6/27/03); 851 So. 2d 1039, 1047. However, the Louisiana Fourth Circuit Court of Appeal has found that the 2006 amendment to La. R.S. 14:108 to include resistance to an unlawful detention as a ground for conviction for Resisting an Officer legislatively overruled *Sims*. *Manuel*, 2006-0486, p. 5; 946 So. 2d at 248.

[5] The *Manuel* court concluded that probable cause did not exist when the defendant fled from an illegal frisk because, at the time of the defendant's arrest, La. R.S. 14:108 did not apply to detentions. 2006-0486, pp. 5–6; 946 So. 2d at 248–49. Given that the statute now includes detentions within the set of police activities to which a person must be resisting in order to be convicted of the offense, flight from an unlawful frisk taking place during an otherwise lawful detention would likely now provide probable cause to arrest for interference with the detention itself.

the view that the right to resist is more than a defense to conviction. Individuals in Louisiana have a right to resist an unlawful arrest because an arrest is a "complete deprivation of liberty" of an "extensive duration." *State v. Sims*, 2002-2208, p. 12 (La. 6/27/03); 851 So. 2d 1039, 1047. If physical resistance to an unlawful arrest (i.e., interference with that arrest) created probable cause to arrest for Resisting an Officer, the right to physically resist in order to preserve one's liberty would be illusory.

However, this Court need not decide at this time whether reasonable physical resistance to an unlawful arrest can still provide probable cause to arrest the resisting person for Resisting an Officer. As discussed above, the Court cannot decide as a matter of law on summary judgment whether probable cause existed to arrest Perry for Operating a Vehicle While Intoxicated, Obstruction of Justice, or Resisting an Officer nor whether reasonable grounds existed to handcuff Perry for officer safety. Because it is unclear whether Kowalzek had lawful authority to place Perry in handcuffs, the Court cannot evaluate whether Perry had the right to physically resist being handcuffed. Therefore, summary judgment must be denied as Perry's state-law false arrest and false imprisonment claims other than those related to the initial detention in the parking lot.

C.     **Tortiously Excessive Force Claims Against Kowalzek, Wheatley, and the City**

Perry alleges that Wheatley and Kowalzek are liable for assault, battery, and excessive force and that the City is vicariously liable. [Record Document 1 at 23–25]. Defendants argue that Perry's claim fails as a matter of law because his Fourth Amendment claims cannot succeed and because the officers were entitled to use force in self-defense or in defense of others.

[Record Document 23-1 at 23].

Under the Louisiana Code of Criminal Procedure, a "person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. Ann. art. 220. Unreasonable or excessive force exposes officers and their agencies to tort liability. *Kyle*, 353 So. 2d at 972. In *Kyle v. City of New Orleans*, the Louisiana Supreme Court identified the duty owed by officers when effecting a lawful arrest—to act reasonably in light of the totality of the circumstances. *Id.* at 972–73. The reasonableness of the force used is measured from the perspective of "ordinary, prudent, and reasonable [persons] placed in the same position as the officers and with the same knowledge as the officers." *Id.* at 973 (citing *Picou v. Terrebonne Par. Sheriff's Office*, 343 So. 2d 306 (La. Ct. App. 1977)). The *Kyle* court also identified six factors (the "*Kyle* factors") by which to evaluate the reasonableness of an officer's conduct:

> the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

*Id.* Louisiana's Second Circuit Court of Appeal has recognized a seventh factor: whether a suspect was "intoxicated, belligerent, offensive, or uncooperative." *Hall v. City of Shreveport*, 45,205, p. 6 (La. App. 2 Cir. 4/28/10); 36 So. 3d 419, 423 (citing *Evans v. Hawley*, 559 So. 2d 500 (La. Ct. App. 1990)). In subsequent cases, the Louisiana Supreme Court used the duty-risk analysis to evaluate excessive force as a species of negligence and held that the *Kyle* factors apply

not only to arrests, but also to approaching and disarming suspects.[6] *Stroik v. Ponseti*, 96-2897, p. 7 (La. 9/9/97); 699 So. 2d 1072, 1077–78; *Mathieu v. Imperial Toy Co.*, 94-0952, p. 6 (La. 11/30/94); 646 So. 2d 318, 323.

On the other hand, where a warrantless arrest lacks probable cause, an officer's use of force is to be analyzed as a battery. *Ross v. Sheriff of Lafourche Par.*, 479 So. 2d 506, 511 (La. Ct. App. 1985). Under Louisiana law, "[a] harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact, is a battery." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). "An assault is the imminent threat of a battery." *Bulot v. Intracoastal Tubular Servs., Inc.*, 98-2105, p. 13 (La. App. 4 Cir. 2/24/99); 730 So. 2d 1012, 1018, *abrogated on other grounds by Bulot v. Intracoastal Tubular Servs., Inc.*, 2004-1376 (La. App. 4 Cir. 11/3/04); 888 So. 2d 1017. However, reasonable force used in self-defense or in defense of others is an affirmative defense to assault and battery claims. *See Duplechain v. Turner*, 444 So. 2d 1322, 1325 (La. Ct. App. 1984).

Kowalzek forced Perry onto the hood of the police cruiser and grabbed Perry's hands to handcuff him. Wheatley punched Perry in the face hard enough to allegedly break his jaw. Both officers took Perry down to the ground. If a jury determines that reasonable cause existed to arrest Perry, the jury would then be entitled to review these facts along with the officers' knowledge at the time that they used each escalating type of force in order to determine whether the degree and type of force was reasonable under the totality of the circumstances. If the jury

---

[6] Although treating excessive force cases under a negligence rubric, the Louisiana Supreme Court has also suggested that the discretionary-act immunity of La. R.S. 9:2798.1 may not apply. For instance, in *Hardy v. Bowie*, the court rejected a municipal request for immunity for its police officers' failure to prevent a shooting because the municipality did not "articulate any social, economic or political policy considerations surrounding the police officers' actions." 98-2821, p. 11 (La. 9/8/99); 744 So. 2d 606, 613.

determines that reasonable cause to arrest did not exist, then the aforementioned assault and battery law would apply. Because the Court cannot determine as a matter of law whether handcuffing Perry was lawful in the first instance, the Court cannot decide which analytic framework applies. As a result, the Court denies summary judgment on Perry's tort claims for excessive force, battery, and assault.

**D.      State Constitutional Claims Against Kowalzek, Wheatley, and the City**

Paralleling his causes of action under the Fourth Amendment, Perry alleges that Defendants violated the right to privacy guaranteed by the Louisiana Constitution: "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5. When analyzing these claims, the parties reiterate their arguments regarding Perry's Fourth Amendment claims. [Record Documents 23-1 at 27–29 and 28 at 11].

In *Moresi v. State ex rel. Department of Wildlife & Fisheries*, the Louisiana Supreme Court determined that state officers are entitled to qualified immunity if they can show that the "state constitutional right alleged to have been violated was not clearly established." 567 So. 2d at 1094. Interpreting *Moresi*, the Fifth Circuit has held that when plaintiffs' state constitutional claims "parallel entirely" their § 1983 claims, qualified immunity applies to the state law claims if it applies to the federal claims. *Roberts*, 397 F.3d at 296.

**1.      Excessive Force Claim**

Louisiana's constitutional standard for evaluating use of force is uncertain, but the parties have briefed this issue as if the standard is the same as that for Fourth Amendment excessive

35

force claims. [Record Documents 23-1 at 29 and 28 at 11]. Louisiana courts apply federal jurisprudence in the probable-cause context. *See, e.g.*, *State v. Triche*, 03-149, pp. 5–6 (La. App. 5 Cir. 5/28/03); 848 So. 2d 80, 84. Similarly, the Louisiana Supreme Court has looked to Fourth Amendment jurisprudence when evaluating the reasonableness of an officer's use of handcuffs. *See, e.g.*, *Porche*, 2006-0312, pp. 7–11; 934 So. 2d at 339–41. Given this precedent and the parties' agreement that Fourth Amendment standards apply, the Court concludes for purposes of this motion that Perry's excessive force claims under the Louisiana Constitution parallel his claims under the Fourth Amendment.

As discussed above for Perry's § 1983 claims, Kowalzek has qualified immunity for the force used while attempting to handcuff Perry, and Wheatley has qualified immunity for the force used to punch Perry. They are thus entitled to qualified immunity on Perry's claims that this conduct violated the Louisiana Constitution. *See Roberts*, 397 F.3d at 296. Turning to the use of force during the takedown, the Court has already found that factual uncertainties prevent a finding of qualified immunity on Perry's § 1983 excessive force claim, and so qualified immunity is also inappropriate here. Therefore, the Court dismisses Perry's excessive force claims under the Louisiana Constitution with the exception of the claim related the force used during and after the takedown.

### 2. Unlawful Seizure Claim

The Court has already held that summary judgment is proper on all of the § 1983 false arrest claims asserted against Kowalzek. Federal and Louisiana law apply the same standards to reasonable suspicion and probable cause determinations. *See Hunt*, 2009-1589, pp. 8–9; 25 So.

3d at 753 (citing *Sokolow*, 490 U.S. at 7; *Kalie*, 96-2650, p. 3; 699 So. 2d at 881) (adopting federal standard for detentions); *Drew*, 360 So. 2d at 510 (adopting federal standard for arrests). Because Kowalzek did not violate the Fourth Amendment by stopping Perry in the parking lot, he committed no state constitutional violation by doing so. The Court found that qualified immunity applied to Perry's other Fourth Amendment false arrest claims; Kowalzek is thus immune when Perry asserts the same claims under the Louisiana Constitution. *See Roberts*, 397 F.3d at 296. Therefore, summary judgment is appropriate on all false arrest claims arising under the Louisiana Constitution's right to privacy.

## VI.  Conclusion

For the reasons given above, Defendants' motion for summary judgment [Record Document 23] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **DENIED** as to (1) the § 1983 and Louisiana constitutional claims against Kowalzek and Wheatley for the force used while taking Perry down to the ground; (2) the state-law false arrest and false imprisonment tort claims for handcuffing and arresting Perry; and (3) the state-law tort claims for battery, assault, and excessive force. The motion is **GRANTED** as to all other claims.

**IT IS ORDERED** that the claims as to which summary judgment has been granted are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ⎸7⎸ day of October, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

37