UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LLOYD PERRY

VERSUS

CITY OF BOSSIER CITY, ET AL.

CIVIL ACTION NO. 5:17-00583

JUDGE ELIZABETH FOOTE

MAGISTRATE JUDGE HAYES

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CERTAIN INJURIES ALLEGED BY PLAINTIFF

**MAY IT PLEASE THE COURT:**

This Court should grant Defendants'[1] Motion for Partial Summary Judgment Regarding Certain Injuries Alleged by Plaintiff ("**Motion**") and dismiss all of Plaintiff, Lloyd Perry's ("**Perry**"), claims for damages related to his alleged (i) lacerated liver, (ii) renal aneurysm, and (iii) anemia associated with acute blood loss injuries (sometimes hereinafter the "**Injuries**"), for the reasons set forth herein.

### BACKGROUND

This civil rights suit arises from events surrounding Perry's arrest by Bossier City Police Officers on April 29, 2016 (the "**Incident**"). The facts of the Incident are extensively set forth in Defendants' previously-filed Motion for Summary Judgment (Rec. Doc 23-1), and this Court's Memorandum Ruling on that motion (Rec. Doc. 37), which Defendants incorporate by reference. As such, those facts need not be reiterated herein, other than to note that video from the incident shows Plaintiff struggling with the first officer who attempted the arrest before ultimately being subdued with assistance from the second officer. (Rec. Docs. 23-5, 23-7, and 23-8).

---

[1] "Defendants" means City of Bossier City, Officer Brandon Kowalzek, and Officer Lamond Wheatley, collectively. This Court previously dismissed all of Perry's claims against Chief Shane McWilliams (Rec. Doc. 37 at pp. 8-9).

Plaintiff filed this suit on April 27, 2017, alleging a host of state and federal constitutional violations as well as state law tort claims. (Rec. Doc. 1). In addition to the Injuries, Perry also alleges he sustained a broken jaw and left eye hemorrhage as a result of being "struck" by Bossier City police officers. (Rec. Doc. 1 at ¶ 13).

In its October 17, 2018 Memorandum Ruling (Rec. Doc. 37), this Court granted Defendants' Motion for Summary Judgment (Rec. Doc. 23) in part, dismissing ten (10) of Perry's claims, with prejudice. In particular, the Court granted Defendants' Motion for Summary Judgment as to Perry's Section 1983 and Louisiana constitutional claims arising from the force used while attempting to handcuff and when striking Perry. (Rec. Doc. 37 at p. 1, 37). However, the Court denied Defendants' Motion for Summary Judgment as to Perry's claims arising from the force used to take Perry to the ground, as well as with respect to Perry's state law battery, assault, and excessive force claims. *Id.* at pp. 1-2, 37. Thus, it appears that at least some of Perry's personal injury claims survived this Court's Memorandum Ruling.

Perry's treatment for the Injuries is well-documented. Following his arrest on April 29, 2016, Perry was transported to University Health-Shreveport Medical Center ("**UH**"). There, Perry refused medical assistance, failed to cooperate with medical personnel, repeatedly cursed (including multiple uses of "f***"), and threatened physical violence.[2] Medical personnel at UH noted that Perry was "obviously intoxicated" at the time.[3] Still, Perry "ambulated without difficulty" to the police car.[4] Later that evening, Perry was transferred to Bossier City Jail, where he also refused treatment, before ultimately being transferred to Bossier Maximum Security Facility.[5]

---

[2] **Exhibit A**, Certified medical records from UH dated April 29, 2016, at p. 5 (Bates 1289).
[3] *Id.*
[4] *Id.*
[5] **Exhibit B**, Deposition of Perry, at p. 105, lines 8-20.

Eleven days later, on May 10, 2016, Plaintiff returned to UH. It was then, for the first time, that Plaintiff told medical staff that he had been beaten by police with a baton and fists to his stomach.[6] Even if true, Perry cannot link the Injuries to Defendants' conduct or the Incident. As set out fully below, Perry's treating physician, Navdeep S. Samra, M.D. ("**Dr. Samra**"), stated that the Injuries were inconsistent with the Incident and it is highly unlikely that the Incident caused the Injuries.

## ARGUMENT

### A.    Summary Judgment Standard.

A party may move for summary judgment on any claim at issue. *See* Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. When the moving party has carried its burden under Rule 56(a), the non-moving party must come forward with "specific facts showing that there is a genuine dispute for trial." The substantive law determines the materiality of the facts and "only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(e) does not permit the non-moving party to avoid summary judgment by resting on the pleadings, but "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and

---

[6] **Exhibit C-2**, Medical records from UH dated May 10, 2016 (labeled "Page 100").

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

**B.      Perry Cannot Prove Medical Causation of the Injuries.**

Perry bears the burden of proving including medical causation of the Injuries with respect to both his Section 1983 and Louisiana state law claims. *See Cefalu v. Edwards*, CIV.A. 12-1377, 2013 WL 3338647, at *8 (E.D. La. July 2, 2013)(Barbier, J.); *Lasha v. Olin Corp.,* 625 So.2d 1002, 1005 (La.1993). "The test for determining the causal relationship between the tortious conduct and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by the accident." *Arabie v. CITGO Petroleum Corp.,* 89 So.3d 307, 321 (La. 2012). Expert medical testimony is required to prove medical causation when the alleged injury is not one within common knowledge. *See Hutchinson v. Shah*, 94-0264 (La. App. 1 Cir. 12/22/94), 648 So.2d 451, 452.

In this instance, Perry simply cannot meet his burden of proving that the Injuries were caused by Defendants' conduct. The medical records do not provide a causal link to the injuries, Perry has not provided any expert reports from medical experts,[7] and his own treating physician has testified that the Injuries are inconsistent with the Incident. As such, this Motion should be granted.

**1.  Lacerated Liver.**

Perry's May 10, 2016 medical examination at UH revealed a Grade 4 lacerated liver; however, there is no evidence that this injury was caused by the Incident. Dr. Samra testified that significant trauma is needed to cause a lacerated liver, however, Perry showed no signs of trauma

---

[7] Perry's deadline to produce expert reports was March 3, 2019. (Rec. Doc. 43). To date, he has failed to produce any medical causation expert reports.

to the abdomen in his physical examination.[8]  Further, the video footage of the Incident does not reveal anything that would normally cause any type of lacerated liver.[9]  Based on his training and expertise,[10] Dr. Samra opined that it is "highly unlikely" that the Incident caused Perry's lacerated liver injury:

> Q:       Okay. And it would not be -- and with regard to the liver laceration,  do you have an opinion as to whether the events that you see in this video would be the cause of the liver laceration?
>
> A:       It's highly unlikely, because you need to have a significant trauma to the liver to have that grade-four injury. [11]

On cross-examination, Dr. Samra maintained his position that nothing on the video of the Incident showed the type of trauma necessary to cause a lacerated liver.[12]  The *best* testimony that Perry's attorney solicited from Dr. Samra was that, falling face down, and being shoved "hard" into concrete with "enough weight and force" could "possib[ly] cause one's liver to lacerate.[13]  But the mere possibility that Perry lacerated his liver in the Incident is insufficient to defeat Defendants' Motion. *See e.g. Donahue v. Smith*, CV 15-6036, 2017 WL 3990713, at *6 (E.D. La. Sept. 11, 2017)(Morgan, J.); *Scott v. City of Shreveport*, 49,944 (La. App. 2 Cir. 6/24/15, 6), 169 So.3d 770, 773. Furthermore, Perry never defined or quantified what "enough weight and force" is needed to lacerate a liver. Perry has also failed to produce, and cannot now offer any, expert testimony to support that "enough weight and force" was applied to him in this case so as to support his hypothesis. Therefore, any attempt to extrapolate a causal connection between the Incident and his lacerated liver is pure speculation and unavailing to Perry for purposes of this Motion.

---

[8] Exhibit **C-3**, Medical records from UH dated May 10, 2016 (labeled "Page 107").
[9] **Exhibit  C** at p. 23, lines 5-11.
[10] Exhibit **C-1**, Dr. Samra's curriculum vitae. In his deposition, Dr. Samra was qualified and tendered as an expert in the field of medicine, and specifically trauma surgery, without objection. *See* **Exhibit  C**, Deposition of Dr. Samra, at pp. 6-7.
[11] **Exhibit  C** at p. 25, lines 20-24
[12] *Id.* at p. 45, lines 6-20.
[13] *Id.* at p. 35, lines 2-7.

### 2.  Renal Aneurysm.

Dr. Samra's testimony clearly establishes that this injury is inconsistent with the Incident. First, as a point of clarification, Perry was diagnosed with a pseudoaneurysm, not an aneurysm.[14] A pseudoaneurysm is a swelling or enlarging of an artery.[15] A pseudoaneurysm of this type is typically caused by "penetrating injuries associated with other type[s] of medical treatment."[16] Pseudoaneurysms caused by blunt abdominal trauma are "extremely rare".[17] Such cases generally involved major automobile accidents or other events involving a significant impact or shearing force.[18]

Having viewed the video of the Incident, Dr. Samra observed no trauma which would normally cause a pseudoaneurysm.[19] To cause a pseudoaneurysm, Dr. Samra would expect to observe significant trauma to the abdomen.[20] But the video of the Incident reveals no such trauma.[21] Here again, Dr. Samra defended his opinion under rigorous cross-examination:

Q:  Can it also be caused by blunt force trauma?

A:  It can be. Rare.

Q:  All right. In this situation we just discussed, if you were thrown to the ground with significant weight on you and you struck the concrete without being able to brace yourself, face first or chest first in this case, could that have caused a pseudoaneurysm?

MR. MASCAGNI:  Object to form.

A:  Very unlikely.

Q:  All right. Is that because you're saying it would have to be caused by some sort of internal incision?

---

[14] **Exhibit C** at p. 20, lines 14-25;  p. 21, lines 1-3.
[15] *Id.* at p. 20, line 1-16.
[16] *Id.* at p. 21, lines 4-8.
[17] *Id.* at p. 41, lines 21-23;  21, lines 15-18.
[18] *Id.* at p. 21, lines 19-24.
[19] *Id.* at p. 22, lines 9-25;  p. 23, lines 1-4.;  p. 25, lines 14-19.
[20] *Id.* at p. 26, lines 16-24.
[21] *Id.* at p. 26, lines 24-25;  27, lines 1-13.

A:       Yeah, some internal injury. Blunt trauma is a cause, but you need a sudden impact, shearing force coming to a halt, and this is what I didn't – I cannot see in the video.

Q:       Outside of the video, if other damage was put upon Mr. Perry, if he was beaten further off camera, would that explain or potentially explain the pseudoaneurysm?

         MR. MASCAGNI:  Object to form.

A:       Sir, it's like a -- I don't know what kind of mechanism it would be.  It would require a heavy impact or sudden shearing, again.

Q:       I guess I'm trying to understand -- you say a heavy impact. Do you mean being hit by a car, or do you mean being punched –

A:       Big force. Force.  A significant force.

Q:       All right.  If I was to punch you as hard as I could in the chest, could that cause it?

A:       No.

Q:       Okay.  Are you saying that falling face forward without bracing yourself onto the concrete would not cause it or it could cause it?

         MR. MASCAGNI:  Object to form.

A:       I can't be completely, like 100 percent sure like not cause it, but it's rare, rare.[22]

The physical examination of Perry likewise revealed no soreness, myalgias (soreness of muscle), arthralgias (soreness of joints), loss of strength, tone, or muscle mass, further substantiating that Perry was not exposed to the significant trauma generally required to produce a pseudoaneurysm.[23]  Again, Perry moved without difficulty during his examination. This is inconsistent with his theory of causation. If he indeed had experienced the trauma sufficiently

[22] **Exhibit C** at pp. 35, lines 23-25,  p. 36, p. 37, lines 1-10.
[23] *Id.* at p. 29, lines 14-25; p. 30, lines 1-22.

7

significant to induce a pseudoaneurysm on April 29, 2016, he likely would have had difficulty ambulating, but Perry presented with no such difficulties.[24]

Dr. Samra also noted that Perry's medical history showed a prior abdominal surgery, which means Perry had previously experienced some significant trauma or injury to that part of his body.[25] Because a pseudoaneurysm may not manifest for months or even years following trauma, Perry cannot plausibly isolate the Incident as the cause of the pseudoaneurysm.[26]

### 3. Anemia

Finally, Perry alleges that he suffered "anemia associated with acute blood loss" as a result of the Incident. No medical records have been produced to date establishing that the Incident had anything to do with this condition, nor has Perry producing an expert report from a physician opining as much. Thus, Perry cannot meet his burden of proving causation, and, as such, this Motion should be granted.

**C.     Without Proof of Medical Causation, Perry's Claims Relating to the Injuries Must be Dismissed.**

In this case, Perry's medical records do not establish a causal link between the Incident and the Injuries. Furthermore, Perry has not produced any expert medical reports proving causation. The paucity of support for Perry's claims with respect to the Injuries, combined with Dr. Samra's testimony disassociating the Injuries from the Incident, warrant summary judgment in favor of Defendants with respect to the Injuries. *See e.g. Cefalu,* 2013 WL 3338647, at *8 (granting summary judgment and dismissing plaintiff's excessive force claim where plaintiff failed to prove medical causation of alleged acute lumbar strain, renal contusion, and other injuries); *Guidry v.*

---

[24] *Id.* at p. 31, lines 13-25.
[25] **Exhibit C** at p. 27, lines 14-24, p. 28, lines 5-14; **Exhibit C-4**, Medical records from UH dated May 10, 2016 (labeled "Page 72").
[26] *Id.* at p. 27, line 25, p. 28, lines 1-4, 19-25; p. 29, line 1.

*Georgia Gulf Lake Charles, LLC*, 08-CV-3000, 2011 WL 2200814, at *2 (W.D. La. Apr. 21, 2011)(Kay, Mag. J.), *report and recommendation adopted*, 2:08-CV-3000, 2011 WL 2214161 (W.D. La. June 7, 2011)(Walter, J.)("The burden is on Plaintiffs to put forth evidence demonstrating that there is an issue for trial and yet they admit that they have no evidence of the injuries complained of. Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact regarding the eye injuries [. . .]. Therefore, this court recommends that summary judgment be granted and those claims of plaintiff [. . .] be dismissed with prejudice"); *see also Bray v. Strategic Restaurants*, CIV.A 08-767-JJB-SCR, 2010 WL 1384665, at *3 (M.D. La. Mar. 30, 2010)(Brady, J.)(granting motion for partial summary judgment regarding plaintiff's claim for eye twitch injury where plaintiff failed to put forth evidence providing a causal link between the plaintiff's alleged eye twitches or neurological injuries and plaintiff's treating physicians stated that the twitches were not caused by incident). Therefore, this Motion must be granted.

## CONCLUSION

For the above and foregoing reasons, Defendants respectfully request that this Court grant their Motion, and dismiss all of Perry's claims related to the Injuries, with prejudice.

9

Respectfully  submitted,

**WIENER  WEISS  &  MADISON**
A Professional  Corporation

By: */s/ Reid A. Jones*_____
       Layne  A. Clark,  Jr. (#23686)
       Reid  A. Jones  (#34611)
330 Marshall  Street,  Suite  1000 (71101)
P. O. Box 21990
Shreveport,  LA  71120-1990
Telephone:     (318) 226-9100
Facsimile:      (318) 424-5128
Email:          lclark@wwmlaw.com
Email:          rjones@wwmlaw.com

**ATTORNEYS  FOR  DEFENDANTS**

**CERTIFICATE  OF  SERVICE**

    I do hereby  certify  that on March 19th, 2019, I served  a copy of the  above and foregoing

on all counsel  of record for Plaintiff  via the Court's CM/ECF filing  system.

                                  */s/ Reid A. Jones*_____
                                  Reid  A. Jones