# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **LLOYD PERRY** | **CIVIL ACTION NO. 17-0583** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **CITY OF BOSSIER CITY, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

This case arises out of allegedly excessive force deployed when officers of the Bossier City Police Department arrested Plaintiff Lloyd Perry ("Perry"). Before the Court is Defendants' motion for partial summary judgment on the issue of medical causation. [Record Document 46]. The motion is **GRANTED IN PART** and **DENIED IN PART**. Because Perry has raised a genuine issue of material fact as to the cause of his lacerated liver and his anemia, summary judgment is **DENIED** as to those injuries. However, because the record provides only highly speculative support for his claim that the force employed by Officers Brandon Kowalzek ("Kowalzek") and Lamond Wheatly ("Wheatly") (collectively, "Defendant Officers") caused his renal pseudoaneurysm, summary judgment is **GRANTED** on that issue.

## I. Background

The facts leading up to Defendant Officers' use of force have been thoroughly described in this Court's previous summary judgment ruling. [Record Document 37]. In brief, Perry called the police to report a hit-and-run on his car. [*Id.* at 2]. Kowalzek arrived to

1

investigate but before he completed the accident report, Perry drove away. [*Id.*]. Kowalzek pulled Perry over and, after some heated discussion, attempted to place Perry in handcuffs. [*Id.* at 3]. Wheatly then arrived and punched Perry, allowing Defendant Officers to take Perry down to the ground. [*Id.* at 3–4]. Kowalzek then completed the handcuffing and transported Perry to the Bossier Parish Jail for booking. [*Id.*].

Perry sued Defendant Officers, the City of Bossier City, and Shane McWilliams, the chief of the Bossier City Police Department, (collectively, "Defendants") for false arrest and excessive force under federal and state law. [Record Document 1]. This Court granted Defendants' motion for summary judgment on all of Perry's claims except: (1) the 42 U.S.C. § 1983 and Louisiana constitutional claims against Defendant Officers for the force used when taking Perry to the ground; (2) the state-law tort claims for false arrest and false imprisonment; and (3) the state-law tort claims for battery, assault, and excessive force related to all of the force used on Perry by Defendant Officers throughout the encounter. [Record Document 37].

While being booked at the Bossier City Jail, Perry collapsed onto the floor. [Record Document 48-3 at 19:11:25–:32 and 48-4 at 3]. The Bossier City Fire Department responded and transported him to the emergency room at University Health-Shreveport ("UH-S") where he refused treatment and demanded to be returned to jail. [Record Documents 48-2 at 2, 48-4 at 3, and 48-5 at 1]. After returning from UH-S, Perry was held at the Bossier Maximum Security Facility ("Bossier Max") and remained lethargic, repeatedly refusing meals and recreation time and spending much of the following days lying in bed. [Record

Documents 48-8, 48-9, 48-10, 48-11, and 48-12]. Ten days after he was arrested, jail officials took him back to UH-S, where he was diagnosed with a Grade 4 liver laceration, renal dysfunction, central hypertension, anemia of acute blood loss, a left renal artery pseudoaneurysm,[1] a left mandible fracture, and a left subconjunctival hemorrhage. [Record Document 48-5 at 4].

Defendants filed this motion for partial summary judgment on the issue of medical causation for three of the injuries that Perry asserts were caused by Defendant Officers' use of force: the anemia, the liver laceration, and the pseudoaneurysm. [Record Document 46].[2] Specifically, Defendants argue that causation for these injuries must be proven via expert medical testimony and that Perry has produced none. [Record Document 46-1 at 4–8]. While Dr. Navdeep Samra ("Dr. Samra"), a trauma surgeon who treated Perry at UH-S, did sit for a deposition, [Record Document 46-6], Defendants contend that Dr. Samra's cautious statements fail to carry Perry's summary judgment burden, [Record Document 46-1 at 4–8]. Conversely, Perry argues that the circumstantial evidence of his condition in the days following the accident (fainting, remaining mostly in bed, refusing many meals, refusing out-of-cell recreation time), combined with the medical records and Dr. Samra's admissions of possible causation, create a genuine factual issue for trial. [Record Document 48 at 5–7]. Defendants reply brief mainly points out that Perry has not provided any medical testimony

---

[1] Although the discharge paperwork identifies the condition as an aneurysm, both parties agree and the medical testimony establishes that Perry had a pseudoaneurysm. [Record Documents 46-2 at 2, 46-6 at 19, and 48 at 6 n.14].

3

regarding causation other than that of Dr. Samra. [Record Document 49 at 1–2].

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or

---

[2] The remaining injuries, such as Perry's fractured jaw, are not addressed in the instant motion. The jury will have to decide whether they were caused by Defendant Officers.

[3] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### III. Law and Analysis

#### A. Standard for Medical Causation

Both parties agree that under Louisiana law, a tort plaintiff must show that his or her injuries more probably than not were caused by the defendant's actions. [Record Documents 46-1 at 4 and 48 at 5]. Where they disagree is over the correct interpretation of the Louisiana jurisprudence. In the context of medical causation, the Louisiana Supreme Court has held, "[w]hile expert medical testimony is sometimes essential, it is self-evident that, as a general

rule, whether the defendant's fault was a cause in fact of a plaintiff's personal injury or damage may be proved by other direct or circumstantial evidence." *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993) (citing *Jordan v. Travelers Ins. Co.*, 245 So. 2d 151, 155 (La. 1971)). Typically, Louisiana courts reduce this statement to a rule that "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *Chavers v. Travis*, 2004-0992, p. 10 (La. App. 4 Cir. 4/20/05); 902 So. 2d 389, 396 (citing *Hutchinson v. Shah*, 94-0264, p. 3 (La. App. 1 Cir. 12/22/94); 648 So. 2d 451, 452). While both parties endorse this rule, [Record Documents 46-1 at 4 and 48 at 5], Perry suggests that Dr. Samra's testimony, when combined with common knowledge that Perry's behavior and complaints in the days following the incident suggest abdominal injury, would allow a jury to infer the necessary causation. [Record Document 48 at 5–6].[4]

Given § 1983's highly general language, the specific parameters of liability for civil rights violations are matters of federal common law, "as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held." 42 U.S.C. § 1988(a); *see Moor v. Cty. of Alameda*, 411 U.S. 693, 702 (1973) ("But inevitably existing federal law will not cover every issue that may arise in the context of a

---

[4] Perry also cites a more recent Louisiana Supreme Court case in which the requirement to establish causation for an injury was described as "medical testimony" without the "expert" modifier. *Arabie v. CITGO Petroleum Corp.*, 2010-2605, p. 19 (La. 3/13/12); 89 So. 3d 307, 321 (citing *Lasha*, 625 So. 2d at 1005). However, in that case, the plaintiffs' self-reported symptoms were supported by evidence from "experts in toxicology, air dispersion modeling, environmental chemistry, exposure monitoring, odor, industrial hygiene, epidemiology, and occupational and environmental medicine." *Id.* In light of that testimony, this Court cannot conclude that the Louisiana Supreme Court has implicitly

federal civil rights action.'")). As enacted federal law does not describe a § 1983 plaintiff's burden of proof, "state law is referred to for 'the kind of evidence that must be produced to support a verdict.'" *Montano v. Orange Cty.*, 842 F.3d 865, 879–80 (5th Cir. 2016) (quoting *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004)). However, a court may apply only those state-law principles that are "not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). The inquiry focuses not only on facial inconsistencies with federal enacted law, but also on inconsistencies with the federal policies underlying § 1983. *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465 (1975); *Sullivan v. Little Hunting Park*, 396 U.S. 229, 240 (1969), *abrogated on other grounds as recognized by Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)). One primary purpose of the federal civil rights statute is, of course, "deterring illegality." *Slade v. City of Marshall*, 814 F.3d 263, 267 (5th Cir. 2016) (quoting *Delesma v. City of Dall.*, 770 F.2d 1334, 1340 (5th Cir. 1985)). Another, as with tort law generally, is to ensure just compensation. *Robertson*, 436 U.S. at 591. Compensation is appropriate only if a violation has caused actual injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986); *Slade*, 814 F.3d at 267 ("Section 1983 seeks to deter abuses of power that have *actually* occurred and compensate victims who have *actually* been injured by such abuses.").

As a result, federal courts have adopted as common law various state-law approaches that limit or deny recovery. For instance, the Supreme Court has instructed federal courts in Louisiana to apply Louisiana's statutory limitation on the persons who may bring survival

---

rejected the rule that expert medical testimony is required to prove causation of medical

7

actions. *Robertson*, 436 U.S. at 593. Following that logic, the Fifth Circuit has accepted that for federal courts in Texas, § 1983 liability following a death must be based on conduct that more probably than not caused the death and not on conduct that merely "reduced the decedent's chance of survival by some lesser degree." *Slade*, 814 F.3d at 265. The panel did so even though the effect on the case at hand of excluding a loss-of-chance-of-survival theory was to deny the plaintiff any relief. *Id.* at 267 (citing *Delesma*, 770 F.2d at 1340); *see also Robertson*, 436 U.S. at 593 ("A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation.").

In the context of an excessive-force claim such as the one at issue here, the Fifth Circuit has held that a wrongful death claim on behalf of a suspect in Louisiana who died after being tased failed because "neither the medical expert that performed the autopsy, nor [the plaintiff's] own expert, testified that [the decedent's] injuries were the direct result of the tasing." *Batiste v. Theriot*, 458 F. App'x 351, 355 (5th Cir. 2012) (per curiam). This holding implicitly accepts the Louisiana rule regarding expert medical testimony. Similarly, the Southern District of Mississippi has adopted for § 1983 cases a nearly identical Mississippi Supreme Court holding: "[i]n all but simple and routine cases . . . it is necessary to establish medical causation by expert testimony." *Campbell v. McMillin*, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000) (quoting *Cole v. Superior Coach Corp.*, 106 So. 2d 71, 72 (Miss. 1958)). Although these evidentiary rules are judge-made rather than statutory or constitutional, the Fifth Circuit gives that distinction no particular significance when incorporating those rules into

---

conditions outside of common knowledge.

the federal common law of § 1983. *See, e.g.*, *Hamburger*, 361 F.3d at 884–85.

Applying Louisiana's expert-testimony rule, though requiring greater pre-trial effort on a plaintiff's part, does not impair the efficacy of § 1983 suits at deterring unlawful conduct. *See Robertson*, 436 U.S. at 592. To conclude the opposite, this Court would have to assume that a state actor is more likely to engage in unlawful conduct that causes a non-obvious injury because, in a subsequent § 1983 suit, the plaintiff would have to prove causation via expert medical testimony. *Cf. id.* ("[E]ven an official aware of the intricacies of Louisiana survivorship law would hardly be influenced in his behavior by its provisions."). This Court cannot accede to such a "farfetched" proposition. *Id.* at 592 n.10. Moreover, the Louisiana rule is consistent with general evidentiary principles regarding a factfinder's inferences. An inference is not a guess. *See Green v. Reynolds Metals Co.*, 328 F.2d 372, 375 (5th Cir. 1964). "[E]vidence which does nothing more than show that the injury could have possibly occurred through a certain way or means . . . cannot justify the conclusion that it occurred that way or by that means." *Id.* In the case of injury to an internal organ, a jury presented with no expert testimony would simply be guessing that force used by an officer against a suspect caused that particular injury.

The question of a causation is "intensely factual." *Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999) (quoting *Savidge v. Fincannon*, 836 F.2d 898, 905 (5th Cir. 1988)). Nevertheless, this Court concludes that to survive summary judgment when alleging causation of an injury or condition outside of common knowledge, a § 1983 plaintiff in Louisiana must produce competent medical evidence that, when combined with other direct

9

and circumstantial evidence, allows a jury to rationally infer that the defendant's conduct caused the injury or condition.

### B. <u>Perry's Injuries</u>

There is no factual dispute that Perry actually suffered from anemia caused by acute blood loss, a lacerated liver, and a renal artery pseudoaneurysm. [Record Document 48-5 at 4]. The only question before this Court is whether there is a genuine dispute of material fact regarding the cause of these injuries.

#### 1. **Anemia**

Defendants argue that the medical records do not link Perry's anemia to Defendant Officers' conduct. [Record Document 46-1 at 8]. Although Dr. Samra did not testify about anemia during his deposition, the UH-S records clearly indicate that ten days after Perry's encounter with the police, he had a diagnosis of "anemia of acute blood loss." [Record Document 48-5 at 4]. While anemia is a technical term for which expert testimony may be helpful, the diagnosis itself explains what "anemia" means in this instance, namely, "acute blood loss." Because the notion of suddenly losing blood as a result of an injury is within jurors' common knowledge, a jury could conclude that Defendant Officers' force caused Perry to lose blood, which in turn caused the "anemia of acute blood loss." Therefore, summary judgment is denied as to this medical condition.

#### 2. **Lacerated Liver**

Based on Dr. Samra's testimony that the conduct recorded by Kowalzek's dashboard camera is "highly unlikely" to have caused the significant laceration of Perry's liver, [Record

Document 46-6 at 25], Defendants argue that Perry cannot establish the requisite causal nexus, [Record Document 46-1 at 4–5]. In response, Perry claims that this is a selective reading of Dr. Samra's deposition, that this Court must infer that there was force other than that caught on camera, and that such force could cause a lacerated liver. [Record Document 48 at 6].

Dr. Samra admitted that it was "possib[le]" that the force Perry experienced when he hit the ground with Defendant Officers on top of him could have caused the liver laceration. [Record Document 46-6 at 35]. He also readily agreed that being struck in the abdomen with a fist or a stick "would . . . cause a lacerated liver" if enough force were used. [*Id.* at 33–34]. While Defendants accurately observe that no video shows that sort of force, [Record Document 46-1 at 5], a clear view of Perry while on the ground is blocked by the hood of Kowalzek's cruiser and Defendant Officers' bodies. [Record Document 48-7 (DVR 1424) at 18:30:45–:31:13]. Perry also moves out of frame when placed in Kowalzek's cruisier. [*Id.* at 18:31:18–:47:42].[5] As Perry points out, [Record Document 48 at 6], these gaps provide a means for this Court to infer, as it must, that during one of the intervals when he is not fully visible, he was struck in the manner he described. Furthermore, at his May 9, 2018 emergency room visit, Perry reported that he had been hit in the face and stomach with fists and police batons during the arrest. [Record Documents 46-8 at 1 and 48-5 at 4].

Perry has also offered significant circumstantial evidence to corroborate his theory of

---

[5] The bodycam worn by another of the responding officers captures slightly more of the encounter, but in it too Perry is still out of frame for a time. [Record Document 48-7 (fullerd BWCXV) at 18:31:07–:32:09].

causation. Dr. Samra has testified that in the footage of Perry prior to his being taken to the ground, he did not display the pain associated with a lacerated liver. [Record Documents 46-6 at 39–41 and 48 at 5].[6] Given that severe force is necessary to cause a lacerated liver, [Record Document 46-6 at 23], the absence of anything in the jail records suggesting that Perry was involved in a fight or otherwise seriously injured while at Bossier Max reinforces an inference that his liver injury did not result from anything after the incident with Defendant Officers. Moreover, the Bossier Max records indicate that Perry "appear[ed] to be in obvious pain in his torso" upon his arrival at that facility. [Record Document 48-8 at 1]. Perry's behavior following the incident also suggests abdominal distress even to a layperson. He spent most of his time in bed and refused a number of meals. [Record Documents 48-8, 48-9, 48-10, 48-11, and 48-12]. Six days after the incident he requested medical attention because he had vomited and had a "knot above his stomach that hurts all the time." [Record Document 48-13 at 1]. When he was taken to UH-S four days later, he repeated these complaints. [Record Documents 46-8 at 1 and 48-5 at 3]. While the medical records indicate no external evidence of trauma, [Record Document 46-9 at 1], Dr. Samra has testified that it is possible that bruising might not be as apparent on a dark-skinned individual such as Perry,

---

[6] Defendants assert that Perry's attempt to highlight this fact is a "veiled attempt to invoke the *Housley* presumption." [Record Document 49 at 6]. Under Louisiana law, when a plaintiff was in good health prior to an accident, had symptoms that appeared after the accident, and produces medical evidence establishing a reasonable probability of causation, medical causation is presumed. *Housley v. Cerise*, 579 So. 2d 973, 980 (La. 1991) (quoting *Lukas v. Ins. Co. of N. Am.*, 342 So. 2d 591, 596 (La. 1977)). As Perry did not even cite *Housley*, this Court will not apply the presumption at the present stage of proceedings. However, this choice does render irrelevant evidence that Perry did not display signs of a lacerated liver prior to his encounter with Defendant Officers.

12

[Record Document 46-6 at 30], and common knowledge suggests that after ten days any bruising from the incident could well have faded significantly. The medical records also indicate that his abdomen was "tender upon palpation." [Record Document 48-5 at 3]. Taken together, this circumstantial evidence, combined with Dr. Samra's testimony establishing a possible causal connection, is sufficient to take this question to a jury. Whether it is sufficient to persuade that jury is, of course, an entirely separate question.

The cases Defendants cite do not compel a contrary result.[7] In two of them, the courts granted summary judgment because there was no evidence that the plaintiff had an injury at all. *See Cefalu v. Edwards*, No. 12-1377, 2013 WL 3338647, at *7–8 (E.D. La. July 2, 2013); *Guidry v. Ga. Gulf Lake Charles, LLC*, 08-CV-3000, 2011 WL 2200814, at *2 (W.D. La. Aug. 21, 2011), *report and recommendation adopted*, 08-CV-3000, 2011 WL 2214161 (W.D. La. June 7, 2011). In another, the plaintiff provided only two pieces of evidence: his own affidavit stating that a doctor had told him that being tased might have caused his heart attack and a medical journal article concluding that tasers can cause heart attacks. *Scott v. City of Shreveport*, 49,944, pp. 4–6 (La. App. 2 Cir. 6/25/15); 169 So. 3d 770, 772–73; *see also Andrews v. Lomar Corp.*, No. 16-14842, 2017 WL 2634212, at *6 (E.D. La. June 19, 2017) (finding a lack of medical causation evidence because the only evidence of a possible causal

---

[7] Three of Defendants' cases primarily concern unrelated legal issues. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) (applying *Daubert* to expert testimony regarding fibromyalgia allegedly caused by a fall); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 516–23 (E.D. La. 2002) (applying *Daubert* to expert testimony regarding impotence, migraine headaches, and post-traumatic stress disorder following a choking incident); *Rowland v. Cont'l Oil Co.*, 374 So. 2d 734, 740 (La. Ct. App. 1979) (addressing a presumption of medical causation in workers' compensation cases).

link was an unsworn letter from a physician), *aff'd*, 710 F. App'x 207 (5th Cir. 2018) (per curiam); *Prim v. City of Shreveport*, 297 So. 2d 421, 423 (La. 1974) (rejecting medical causation evidence when the physician did not testify to a relevant causal link). In still other csaes, the plaintiffs' physicians actually opined that the plaintiff's injuries were <u>not</u> caused by the defendant's conduct. *See Vo v. Chevron USA, Inc.*, CIV.A. 12-1341, 2014 WL 3401095, at *2 (E.D. La. July 11, 2014); *Bray v. Strategic Restaurants*, CIV.A 08-767-JJB-SCR, 2010 WL 1384665, at *3 (M.D. La. Mar. 30, 2010). Finally, Defendants' two cases that most directly concern the expert-testimony rule address medical issues allegedly caused by exposure to airborne mold or chemicals. *See Pratt v. Landings at Barksdale*, CIV.A. 09-1734, 2013 WL 5376021, at *7 (W.D. La. Sept. 24, 2013); *Thomas v. Comfort Ctr. of Monroe, LA, Inc.*, 2010-0494, pp. 13–14 (La. App. 1 Cir. 10/29/10); 48 So. 3d 1228, 1237. The causal mechanisms in those cases lie substantially further outside of common knowledge than the relationship between physical force applied during an alleged assault and an injury, such as a liver laceration, that results from trauma.

Here, in addition to the corroborating evidence that Perry was in physical distress in the days after the accident, there is uncontroverted medical evidence that Perry did have a significant liver laceration and that this could have been caused by force applied when he hit the ground or was off camera. In light of these facts and inferences, this Court will deny summary judgment as to the medical causation of Perry's lacerated liver.

### 3. Renal Pseudoaneurysm

A pseudoaneurysm in a renal artery is sufficiently outside of common experience that

expert medical testimony is required to establish causation. Perry asserts as a genuine issue of material fact that "[t]here is no indication that [he] suffered additional injury that could have caused . . . a pseudoaneurysm between the time of arrest and the time that he was treated" ten days later. [Record Document 48-1 at 2]. While this claim appears to be true, Dr. Samra's testimony raises serious doubts about the validity of Perry's theory that the pseudoaneurysm resulted from force applied by Defendant Officers.

Dr. Samra testified that a pseudoaneurysm will "[u]sually . . . be caused by some form of injury which should be like in a high-impact or like a sudden stop, like a shearing force." [Record Document 46-6 at 20–21]. He did not see anything in the video that would have been sufficient under normal circumstances to result in a pseudoaneurysm. [*Id.* at 23, 25]. According to Dr. Samra, it is "rare" for a pseudoaneurysm to result from blunt abdominal trauma, and Perry's pseudoaneurysm was "very unlikely" to have been caused by whatever force Perry experienced when he was taken down to the ground. [*Id.* at 21, 35, 36]. Although admitting "I can't be completely, like 100 percent sure like not cause it, but it's rare, rare," Dr. Samra categorically rejected the possibility that a hard punch to the chest would cause a pseudoaneurysm. [*Id.* at 37]. He also opined that he was unsure of any mechanism by which a beating would result in a pseudoaneurysm. [*Id.* at 36]. Significantly, the doctor identified a potential alternate cause—Perry's prior abdominal surgery—and characterized the abdominal pain that Perry reported as inconsistent with a renal pseudoaneurysm. [*Id.* at 28–29, 41–42].

It is true that Dr. Samra did not completely rule out excessive force as a cause of Perry's pseudoaneurysm and did allow that pain from a lacerated liver could overwhelm or

15

mask pain from a pseudoaneurysm. [*Id.* at 37–39]. Nevertheless, a plaintiff's burden on summary judgment is not merely to create "some metaphysical doubt." *Little*, 37 F.3d at 1075 (quoting *Matsuhita Elec. Indus. Co. v. Zenthi Radio Corp.*, 475 U.S. 574, 586 (1986)). "[W]eak or tenuous" evidence on a necessary point is insufficient. *Armstrong*, 997 F.2d at 67. To survive summary judgment, Perry's causation evidence must surpass the threshold of mere possibility. Because Dr. Samra's testimony only establishes what is essentially a theoretical method of causation and because, unlike the case with the lacerated liver, Perry's fatigue, lack of appetite, and abdominal soreness do not corroborate this injury, summary judgment is granted on his claim that Defendant Officers caused his renal pseudoaneurysm.

## IV. Conclusion

For the reasons given above, Defendants' motion for partial summary judgment on the issue of medical causation [Record Document 46] is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to Perry's claim that the Defendant Officers caused his pseudoaneurysm but **DENIED** as to his claim that they caused his liver laceration and his anemia.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this __23rd__ day of __April_____, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

16